# *IN THE SUPREME COURT, STATE OF WYOMING*

## 2016 WY 23

*October Term, A.D. 2015*

**February 24, 2016**

| | |
|---|---|
| **BOARD OF PROFESSIONAL RESPONSIBILITY, WYOMING STATE BAR,**<br><br>Petitioner,<br><br>v.<br><br>**JO ANN FULTON,**<br><br>Respondent. | D-06-3 |

## ORDER REINSTATING ATTORNEY TO THE PRACTICE OF LAW

[¶1]    **This matter** came before the Court upon the "Report and Recommendation for Reinstatement," filed herein February 5, 2016, by the Board of Professional Responsibility for the Wyoming State Bar.  By order entered April 20, 2006, this Court suspended Respondent from the practice of law for a period of three years. *Board of Professional Responsibility, Wyoming State Bar v. Fulton*, 2006 WY 51, 133 P.3d 514 (Wyo. 2006).  Respondent subsequently sought reinstatement.  Now, after a careful review of the Board of Professional Responsibility's Report and Recommendation for Reinstatement and the file, this Court finds that the Report and Recommendation should be approved, confirmed, and adopted by the Court; and that the Respondent, Jo Ann Fulton, should be reinstated to the practice of law.  It is, therefore,

[¶2]    **ADJUDGED AND ORDERED** that the Board of Professional Responsibility's Report and Recommendation for Reinstatement, which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further

[¶3]    **ADJUDGED AND ORDERED** that the Respondent, Jo Ann Fulton, be, and hereby is, reinstated to the practice of law in Wyoming, effective immediately; and it is further

[¶4]   **ORDERED** that, pursuant to Rule 4(a)(iv) of the Disciplinary Code for the Wyoming State Bar, this Order Reinstating Attorney to the Practice of Law, along with the incorporated Report and Recommendation for Reinstatement, shall be published in the Wyoming Reporter and the Pacific Reporter; and it is further

[¶5]   **ORDERED** that the Clerk of this Court shall docket this Order Reinstating Attorney to the Practice of Law, along with the incorporated Report and Recommendation for Reinstatement, as a matter coming regularly before this Court as a public record; and it is further

[¶6]   **ORDERED** that the Clerk of this Court transmit a copy of this Order Reinstating Attorney to the Practice of Law to the members of the Board of Professional Responsibility and to the clerks of the appropriate courts of the State of Wyoming.

[¶7]   **DATED** this 24th day of February, 2016.

**BY THE COURT:**

/s/

**E. JAMES BURKE**
**Chief Justice**

IN THE SUPREME COURT
STATE OF WYOMING
FILED

FEB - 5 2016

*cat*

CAROL THOMPSON, CLERK

*In the matter of* )
)
**JO ANN FULTON,** )
)          WSB No. 2015-127
*WSB No. 5-2686,* )          D-06-0003
)
*Respondent* )

# REPORT AND RECOMMENDATION FOR REINSTATEMENT

The Board of Professional Responsibility (BPR) convened on the 25th day of January, 2016, to consider the Stipulated Motion for Reinstatement submitted by Bar Counsel, Mark W. Gifford, Respondent, Jo Ann Fulton, and her counsel, C.M. Aron. The Board having reviewed the stipulation, the supporting affidavit of Respondent, the procedural history of the case as set forth in attachments to the stipulated motion, and being otherwise fully advised in the premises, finds, concludes and recommends as follows:

## Findings

1. On December 14, 2015, Respondent filed a Verified Petition for Reinstatement. The present petition follows an unsuccessful effort by Respondent in 2012 to gain reinstatement after a three year suspension ordered by the Wyoming Supreme Court on April 20, 2006. The following is a detailed statement of the procedural history of this matter:

2. Respondent was admitted to the Wyoming State Bar in 1990 and practiced law continuously in Wyoming until 2006, when disciplinary proceedings initiated in 2005 culminated with an order suspending Respondent from the practice of law for three years, commencing April 20, 2006. *Board of Professional Responsibility v. Fulton*, 2006 WY 5, 133 P.3d 514 (Wyo. 2006).

3.     The order of suspension approved, confirmed and adopted the BPR's report and recommendation filed March 7, 2006, which followed a disciplinary hearing before the BPR held February 28, 2006.

4.     Two separate formal charges were considered at the February 28, 2006, hearing. The first, No. 2005-02, involved Respondent's conduct in the handling of a contingent fee matter in violation of Rules 1.1, 1.2, 1.4, 1.5, 1.15, 3.1 and 8.4 of the Wyoming Rules of Professional Conduct. *Fulton, supra,* 133 P.3d at 516. The second, No. 2005-029, involved Respondent's conduct in having direct contact with a party represented by counsel in violation of Rule 4.2. *Id.* at 517. In both matters, the BPR determined that Respondent failed to file an answer to the formal charge, resulting in orders of default and setting of a consolidated sanctions hearing. *Id.* at 515. Respondent appeared and represented herself at the sanctions hearing. *Id.* at 514.

5.     The contingent fee matter that led to the formal charge in No. 2005-02 was a personal injury case in which Respondent represented the plaintiffs. In that matter, Respondent was found to have engaged in the following professional misconduct:

a.     Respondent did not provide her clients with a copy of the Rules Governing Contingency Fees for Members of the Wyoming State Bar as required by those rules, and she charged her client for paralegal fees that should have been part of the contingency fee. Such conduct was found to violate Rule 1.5.

b.     Respondent used settlement funds to purchase a two-year certificate of deposit in the name of her law firm and did not provide her clients with documentation of that purchase when they requested it. Respondent issued her clients checks drawn on her operating account for a portion of the net settlement proceeds, but the checks were returned for insufficient funds. Respondent later replaced them with a Cashier's Check for the agreed settlement amount. Respondent recognizes and acknowledges that such

2

conduct violated Rule 1.15. The BPR also found, and Respondent recognizes and acknowledges, that her failure to respond to the clients' request for information was a violation of Rule 1.4.

c.     The BPR found that Respondent told her clients interest on settlement funds was not taxable if Respondent kept those funds, and found that Respondent also filed a lawsuit that had no merit. Such conduct was found to violate Rule 1.1. The filing of a meritless lawsuit was also found to violate Rule 3.1.

d.     The BPR found that Respondent counseled her clients regarding how to unlawfully avoid taxes on the settlement proceeds. Such conduct was found to violate Rules 1.2 and 8.4. *Id.* at 516-18.

6.     The formal charge in No. 2005-029 resulted from a dispute between neighbors in Laramie. Respondent's clients were threatening to file a lawsuit over the noise level of their neighbors' air conditioner. Despite Respondent's awareness that the neighbors were represented by counsel, Respondent sent a letter to the neighbors and failed to copy their counsel. Such conduct was found to violate Rule 4.2. *Id.* at 517-18.

7.     In determining the appropriate sanction for Respondent's misconduct, the BPR found the following aggravating factors:

a.     Prior disciplinary offenses. Respondent was found to have a significant history of prior discipline. In 2002, Respondent received a private reprimand for violations of Rules 3.1 and 4.4 in regard to asserting a non-meritorious claim. By order dated July 23, 2003, the 10th Circuit Court of Appeals suspended Respondent from practice before that court as the culmination of a number of disciplines it had issued to her. The Wyoming Supreme Court, based on that suspension by the 10th Circuit, issued a public censure to Respondent on January 6, 2004. *Id.* at 518.

3

b.    <u>Pattern of misconduct.</u> Respondent was found to have continued to breach the same types of rules in No. 2005-02 as she did in regard to her prior disciplinary matters.

c.    <u>Multiple offenses.</u> Respondent's violation of multiple rules was found to show "either a lack of knowledge of her ethical obligations or a consistent disregard of them or both." *Id.*

d.    <u>Bad faith obstruction of disciplinary proceeding.</u> Respondent initially failed to timely answer the amended formal charge in No. 2005–02 and the formal charge in No. 2005–29. After the defaults were entered, and Respondent was sent notice of them, she did nothing until the pre-hearing conference on 10 January 2006 which preceded the hearing which was set to begin on 18 January 2006. At that time, she made an oral request for time to file a motion to set aside the defaults. She represented to the BPR chair that she needed at least 10 days to prepare the motion and get the necessary affidavits to support the motion. Therefore, the hearing on these matters was continued for about 6 weeks to allow Respondent time to file her motion, for the Bar to respond, and for the entire Board to consider the motion. The motion, however, was not timely filed, and there were no affidavits filed. *Id.*

e.    <u>Submission of false evidence.</u> Respondent testified under oath to several matters that the BPR found were contradicted by tape-recorded telephone conversations between Respondent and her clients. *Id.* at 518-19.

f.    <u>Refusal to acknowledge wrongful nature of conduct.</u> At the hearing, the Respondent did not take full responsibility for or acknowledge her wrongful conduct. To the contrary, she sought to blame her staff for issuing the settlement checks on the wrong account which resulted in them being returned for insufficient funds. She sought to

4

blame the bank for the manner in which the certificate of deposit was issued. She sought to blame her mishandling and commingling of the trust account monies on Bar Counsel for not recommending a CLE she could take on trust accounts after Respondent's trust account was overdrawn through an error in her office in June 2004. She sought to blame her clients for how the settlement monies were handled and distributed. *Id.* at 519.

g.    <u>Vulnerability of victim.</u> Respondent's clients in No. 2005-02 were unsophisticated consumers of legal services and trusted Respondent to provide a fair and proper representation agreement and to properly purchase a CD which was secure and which fit their needs. In addition, the filing of a frivolous lawsuit delayed the payment of their settlement funds for more than 11 months. *Id.*

h.    <u>Substantial experience in the practice of law.</u> Respondent had been practicing law since 1990. *Id.*

8.    In consideration of the rules violated by Respondent, the duties breached and the presence of the foregoing aggravating factors, the BPR recommended a three year suspension, plus the assessment of costs of the disciplinary proceedings and administrative fees. *Id.*

9.    In an order issued April 20, 2006, the Wyoming Supreme Court approved, confirmed and adopted the BPR's report and recommendation, with Respondent's three year suspension to begin immediately. The Court ordered Respondent to reimburse the Wyoming State Bar for costs associated with the disciplinary proceedings in the amount of $3,779.98, as well as pay an administrative fee of $1,000.00.

10.    Respondent timely paid the costs and administrative fees ordered by the Court, and complied with and satisfied the requirements of Section 22 of the Disciplinary Code regarding notification of clients and opposing counsel, return of unearned fees, and security of records.

11.    On April 17, 2009, Respondent filed a "Rule 24 Motion of the Disciplinary Code for the Wyoming State Bar for Reinstatement After Suspension." The motion was assigned BPR No. 2009-55 and was set for hearing on June 29, 2009.

12.    On June 10, 2009, Respondent was cited for violation of W.S. § 6-2-501(b) and (e), misdemeanor simple assault of a family member.

13.    On June 12, 2009, Respondent pleaded guilty to the charges of misdemeanor simple assault of a family member and was granted first offender status pursuant to W.S. § 7-13-101 pursuant to which she was placed on unsupervised probation. As a result of that event, Bar Counsel, Rebecca Lewis, requested that Respondent submit to a psychological evaluation. At Respondent's request, the June 19, 2009, hearing was postponed.

14.    Although there were subsequent communications between Respondent and Bar Counsel Lewis about the scheduling of a psychological evaluation, the evaluation was never performed and Respondent's motion for reinstatement stalled.

15.    Respondent satisfactorily completed the terms and conditions of her unsupervised probation and was granted an early discharge from probation. The matter was dismissed on June 24, 2010. Respondent has had no further criminal charges or citations.

16.    In January 2012, Laramie attorney, C.M. Aron, counsel for Respondent, sent an email to Bar Counsel, Mark W. Gifford, advising that Respondent and her counsel were preparing to "re-open the reinstatement." On March 14, 2012, Mr. Aron filed an Entry of Appearance on Respondent's behalf.

17.    On August 12, 2012, a hearing was held on Respondent's motion for reinstatement filed April 17, 2009. The Wyoming State Bar was represented by Bar Counsel. Respondent was present, along with her counsel, Mr. Aron. The BPR heard the testimony of certain witnesses, received exhibits into evidence, and heard argument from counsel.

6

18. On September 12, 2012, the BPR's "Findings of Fact, Conclusions of Law, and Recommendation for Non-Reinstatement" were filed with the Court. The BPR found that Respondent failed in her burden, pursuant to Section 24 of the Disciplinary Code of the Wyoming State Bar, to prove by clear and convincing evidence the necessary rehabilitation from the actions which caused her license to be suspended. More specifically, the BPR found:

- "Absent is any corroborating and/or illustrative evidence from which it can reasonably be concluded that [Respondent] has identified the underlying issues that resulted in her suspension, addressed those issues, changed or will no longer engage in the prior conduct that resulted in her suspension."
- "[Respondent] has failed to meet her burden of proof because she has done little or nothing to address any of the underlying violations except in two instances. First, in a limited manner she addressed one part of her trust account violation. Second, she showed that prior to her suspension in 2006, she obtained a mentor and thereafter complied with the filing requirements of the 10th Circuit Court of Appeals."

19. On October 17, 2012, the Court issued an order denying Respondent's motion for reinstatement, in which the Court approved, confirmed and adopted the BPR's report and recommendation. The Court ordered Respondent to reimburse the Wyoming State Bar in the amount of $4,448.44, representing the costs and expenses incurred in regard to the motion for reinstatement. Respondent timely paid the costs ordered by the Court.

20. On December 14, 2015, Respondent filed a Verified Petition for Reinstatement with the BPR.

21. Because this matter originated with formal charges that were filed prior to the July 1, 2015, effective date for the Rules of Disciplinary Procedure, the reinstatement provisions of the Disciplinary Code for the Wyoming State Bar apply to this proceeding. Section 24 of the Disciplinary Code, "Reinstatement After Suspension or Disbarment," provides as follows:

(a) An attorney who has been suspended for six (6) months or less shall be reinstated automatically upon the expiration of the period of suspension and the filing of an affidavit with the Court, a copy of which shall be served upon the BPR, which shows:

(i) all past annual license fees, the current year's annual license fee and any late

7

charges have been paid in full, in addition to all past and current annual fees for continuing legal education;

(ii) the attorney is current on all mandatory continuing legal education requirements;

(iii) there have been no claims or awards made in regard to an attorney on the client's security fund for which the fund has not been reimbursed; and

(iv) the attorney has complied with all other applicable conditions for reinstatement.

(b) An attorney who has been suspended for a specific period of greater than six (6) months may petition the BPR for reinstatement no sooner than ninety (90) days prior to the expiration of the period specified in the order of suspension unless another period is specified in the order which petition shall include certification that:

(i) all past annual license fees, the current year's annual license fee and any late charges have been paid in full, in addition to all past and current annual fees for continuing legal education;

(ii) the attorney is current on all mandatory continuing legal education requirements;

(iii) there have been no claims or awards made in regard to an attorney on the client's security fund for which the fund has not been reimbursed; and

(iv) the attorney has complied with all other applicable conditions for reinstatement.

(c) An attorney who has been disbarred may not petition for reinstatement for at least five (5) years from the effective date of the disbarment unless another period is specified in the order.

(d) An attorney who has petitioned for reinstatement after disbarment and such application has been denied may not again petition for reinstatement for at least three (3) years from the date of the order denying the attorney's last petition for reinstatement unless another period is specified in the order.

(e) A fee of five hundred dollars ($500.00) shall accompany the filing of a petition for reinstatement by a suspended attorney. A fee of one thousand dollars ($1000.00) shall accompany the filing of a petition for reinstatement by a disbarred attorney. In addition, the BPR may recommend to the Court that the necessary expenses incurred in the investigation and processing of a motion for reinstatement be paid by the respondent, and the Court in its discretion may so order.

(f) Following receipt of a petition for reinstatement, Bar Counsel and the attorney may stipulate to reinstatement by submitting to the BPR a written stipulation and affidavit of the attorney which provides a detailed description of the factual basis for compliance with the elements detailed below in subsection (g). Any such stipulation shall be approved or disapproved by the BPR. If the stipulation is approved, a report and recommendation shall be transmitted to the Court. If accepted by the Court, the Court shall issues its order stating that the attorney is reinstated to the practice of law, which may include any conditions the Court deems appropriate.

(g) If Bar Counsel does not stipulate to reinstatement or if the BPR or Court does not approve a stipulation for reinstatement, a hearing shall be held by the BPR. At the hearing, the suspended or disbarred attorney shall have the burden of proving by clear and convincing ev-

idence the following:

(i) The respondent has been rehabilitated;

(ii) The respondent has substantially complied with all requirements imposed by the Court;

(iii) The respondent has the character and fitness qualifications to practice law in this state as outlined in Section IV of the Wyoming Rules and Procedures Governing Admission to the Practice of Law;

(iv) The respondent is competent to practice law in this state;

(v) The respondent's resumption of the practice of law shall not be detrimental to the administration of justice and the public interest.

(h) After a hearing, the BPR shall issue a report of its findings of fact and conclusions of law and the full record of the matter to the Court, together with its recommendation on the petition for reinstatement. The Court shall then enter a final order deciding the petition.

(i) If an attorney who has been disbarred or suspended does not seek reinstatement within three (3) years from the date that attorney first becomes eligible to seek reinstatement, such attorney's membership in the Wyoming State Bar shall terminate. Such attorney who thereafter seeks admission to the Wyoming State Bar shall comply with the admissions requirements set forth in Sections II and IV of the Wyoming Rules and Procedures Governing Admission to the Practice of Law.

22. In her affidavit of factual basis submitted with the Stipulated Motion for Reinstatement, Respondent provided satisfactory evidence of her eligibility and suitability for reinstatement, including:

a. Respondent paid all costs and administrative fees required by the 2006 order of suspension and the 2012 order denying reinstatement. Respondent had paid the $500.00 filing fee for the present petition for reinstatement.

b. Since her 2006 suspension, Respondent has paid all required annual license fees, including the license fee for 2015-2016.

c. Since her 2006 suspension, Respondent has remained compliant with her annual Continuing Legal Education (CLE) requirements, including the 2015 compliance period just ended. Among the classes Respondent has attended in the past two years were several Bar-sponsored ethics courses: "It's Not the Fruit, It's the Root: Getting to the Bottom of our Ethical Ills" (June 9, 2014); "Proposed Changes in the Wyoming Discipli-

9

nary Code" October 16, 2014); and "New Developments in Professional Responsibility" (March 27, 2015).

d.     Respondent has accepted responsibility for the conduct that led to her suspension and is cognizant of the shortcomings upon which the Board based its decision to deny reinstatement in 2012. Specifically, Respondent has carefully reviewed the 2006 order of suspension and the 2012 order denying reinstatement. Respondent has made careful study of the Rules of Professional Conduct, including those Respondent was found to violate in the suspension proceeding, and will endeavor to conduct herself in all respects in vigilant compliance with those rules. Respondent is aware of the Bar's Ethics Hotline, and will not hesitate to contact Bar Counsel for guidance as specific questions arise. In addition, Respondent has several mentors upon whom she will not hesitate to call for guidance as the need arises.

e.     In addition to compliance with all CLE requirements, Respondent has engaged in other efforts to maintain and further her competence to practice law. Since 2011, Respondent has worked for Cathedral Home for Children as an Emergency Relief Youth Worker at the Laramie Youth Crisis Center (LYCC), a "crisis intervention" facility for both youth and families. Respondent's position requires interaction with neglected and abused children in the State's protective custody, as well as juveniles in the Juvenile Justice System. While not practicing law or giving legal advice, Respondent has been active on the cutting edge of the neglect and abuse/protective custody issues and procedures, and the dynamics of families experiencing these various issues, whether in dealing with parents charged with and defending a neglect and abuse allegation, or a child in need of protective custody. Respondent has worked closely with youths in the Juvenile Justice

10

System, prior to adjudication, during adjudication and under resulting court orders placing children on probation, ISP or placement in a correctional facility.

f. In that some of the juveniles are runaways and/or from out of state, Respondent has also remained current on the Interstate Compact regarding out-of-state children.

g. In addition, as she did in her prior law practice, Respondent has maintained her competence with respect to Social Security Disability matters, having been heavily involved as an advocate for her brother in efforts to obtain Social Security Disability benefits, something that non-lawyers are allowed to do by the Social Security Administration. In that regard, Respondent has remained current with all aspects of the Social Security Disability system, from application to award of disability benefits; awareness of the medical proofs required to demonstrate disability and working with applicants to ensure the medical records are in order prior to an administrative hearing.

23. If reinstated, Respondent intends to focus her practice on juvenile justice, including completion of the training program of the Public Defender's office for *Guardians ad Litem,* following which she will endeavor to be placed on the list of attorneys qualified to represent children. Respondent also plans to continue assisting clients in Social Security-related matters. Thus, Respondent's goal is to focus her practice on two areas in which clients are sorely in need of legal representation.

24. Respondent has a long exhibited a commitment to community and public service, as evidenced by her membership, during the years 2000 to 2005, on the State of Wyoming Board of Education (Board Chair, 2003-2005), the State of Wyoming Early Childhood Development Council, and the State of Wyoming Education Planning and Coordination Council. More recently, from 2010 to 2013, Respondent served on the Board of Directors of the Laramie Soup Kitch-

11

en, where her work included organizing record keeping as well as success in writing grants and in making application to United Way.

25. Bar Counsel has met with Respondent and her counsel and has discussed issues relating to her competence as well as her character and fitness to practice law. Bar Counsel recommends Respondent for reinstatement without reservation.

The full BPR met and considered the Stipulated Motion for Reinstatement on Monday, January 25, 2016 together with supporting materials. In light of the foregoing, the BPR unanimously recommends that Respondent be reinstated to the practice of law.

DATED this 2ⁿᵈ day of _February_, 2016.

Judith A.W. Studer, Chair
Board of Professional Responsibility
Wyoming State Bar

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing was mailed by United States Mail, postage prepaid, on this ___5ᵗʰ___ day of _February_, 2016, to the following:

C.M. Aron
Aron & Hennig, LLC
First Interstate Bank Building
221 East Ivinson St., Ste 200
Laramie, WY 82070
Attorney for Respondent

and by hand delivery to Mark W. Gifford, Bar Counsel, Wyoming State Bar.

Brandi Robinson
Board of Professional Responsibility
Wyoming State Bar

12